SEALED

FILED BY _____ D.C.
OCT 05 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-Cr-60191-Bloom/Valle

18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

ANCY MORANCY,

       Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Small Business Administration

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

### *The Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic. One source of relief that the CARES Act provided was the Paycheck Protection Program ("PPP"), which authorized forgivable loans to small businesses for job retention and certain other expenses.

4. The SBA promulgated regulations concerning eligibility for a PPP loan. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation on February 15, 2020, and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. Payments to independent contractors are typically reported to the Internal Revenue Service ("IRS") on a "Form 1099-MISC." In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses or gross income; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

5. In addition, a business applying for a PPP loan was required to provide documentation showing its payroll expenses. This payroll information was material to the application because, pursuant to statutory requirements and implementing regulations, the amount of the loan that typically could be approved was a function of the applicant's historical payroll

costs, consisting of compensation to its employees whose principal place of residence was the United States, subject to certain exclusions.

6. Individuals who operated a business under a "sole proprietorship" business structure were eligible for a PPP loan. To qualify for such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship. Sole proprietorships typically report their income and expenses yearly to the IRS on a "Form 1040, Schedule C." As with other PPP loans, this information and supporting documentation was used to calculate the amount of money the individual was entitled to receive under the PPP. The maximum PPP loan amount for a sole proprietor with no employees was $20,833.

7. PPP loan applications were processed by participating lenders and third-party loan processors. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. After the lender funded the PPP loan to the borrower, the lender submitted disbursement details into the SBA E-Tran system with servers located in Sterling, VA. The SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the PPP processing fee to the lender through the Financial Management System of the U.S. Treasury. The primary server for the Financial Management System was in Sterling, VA. The PPP processing fee varied depending on the amount of the loan. Once created, the payment files were then transmitted via wire to the U.S. Treasury disbursing office in Kansas City, Missouri,

which, in turn, sent instructions for payment of funds to the Federal Reserve Bank Automated Clearing House processing site in East Rutherford, New Jersey.

9. The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments for the business. The proceeds of a PPP loan were not permitted to be used by the borrower to purchase consumer goods, automobiles, personal residences, clothing, or jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the borrower utilized 60% of the loan in the 24 weeks post-disbursement toward payroll costs and utilized the remaining 40% on qualified expense items (e.g., mortgage, rent, and utilities).

11. Applying for PPP loan forgiveness was a separate process that required additional affirmations that the applicant satisfied the eligibility for PPP loan forgiveness. Whatever portion of the PPP loan was not forgiven was serviced as a loan.

### *The Defendant*

12. **ANCY MORANCY** was a resident of Broward County, Florida.

13. **ANCY MORANCY** was the registered agent and manager of Moore Services Investment Group LLC, which was a Florida Limited Liability Company created on or about June 18, 2019.

### *Relevant Lender and Loan Processor*

14. Lender 1 was a participating lender in the PPP and was based in Bedford, Texas.

15. Loan Processor 1 was a third-party loan processor, based in Scottsdale, Arizona, that processed PPP loan applications for Lender 1.

## COUNT 1
## Wire Fraud
## (18 U.S.C. § 1343)

16.   The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

17.   From in or around April 2021, through in or around November 2021, the exact dates being unknown to the Grand Jury, in Broward County, Florida, in the Southern District of Florida, and elsewhere, the defendant,

**ANCY MORANCY,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE SCHEME AND ARTIFICE

18.   It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by, among other things: (a) submitting and causing the submission of a false and fraudulent application for a PPP loan made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) submitting and causing the submission of a false and fraudulent application for forgiveness of the PPP loan.

## THE SCHEME AND ARTIFICE

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included, among others, the following:

19. **ANCY MORANCY** submitted and caused the submission of a PPP loan application to the SBA, Lender 1, and Loan Processor 1, which contained materially false and fraudulent information as to the defendant's gross revenue and the purpose for the loan, among other things.

20. **ANCY MORANCY** submitted and caused the submission of materially false and fraudulent information and documentation in support of the application for the PPP loan, including falsified Internal Revenue Service tax forms, including a Schedule C, among other things.

21. As a result of the false and fraudulent PPP loan application submitted as part of this scheme, Lender 1 approved PPP loan number 8855708709 for **ANCY MORANCY** and disbursed the loan proceeds in the approximate amount of $20,832 to **ANCY MORANCY** at Bank of America, N.A., bank account number ending in 7458 in the name of Moore Services Investment Group LLC.

22. In furtherance of the scheme and artifice, **ANCY MORANCY** submitted and caused the submission of materially false and fraudulent information to the SBA, Lender 1, and Loan Processor 1 to cause and attempt to cause the forgiveness of PPP loan number 8855708709, to which **ANCY MORANCY** was not entitled.

23. **ANCY MORANCY** used the proceeds of the scheme and artifice to enrich himself and not for qualified expenses under the PPP.

## USE OF WIRES

24. On or about May 20, 2021, in Broward County, Florida, in the Southern District of

Florida, and elsewhere, the defendant, **ANCY MORANCY**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, that is, the transmission of an Automated Clearing House payment in the amount of approximately $20,832 from Lender 1 to **ANCY MORANCY** at Bank of America, N.A., bank account number ending in 7458 in the name of Moore Services Investment Group LLC, in the Southern District of Florida and elsewhere.

In violation of Title 18, United States Code, Section 1343.

## **FORFEITURE ALLEGATIONS**

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ANCY MORANCY**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

[Remainder of page left intentionally blank.]

3. All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
BERTHA R. MITRANI
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ANCY MORANCY,

_____/
Defendant.

CASE NO.: _____

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
☐ Miami    ☐ Key West    ☐ FTP
☒ FTL      ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __3__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:
   (Check only one)                      (Check only one)
   I    ☒ 0 to 5 days                    ☐ Petty
   II   ☐ 6 to 10 days                   ☐ Minor
   III  ☐ 11 to 20 days                  ☐ Misdemeanor
   IV   ☐ 21 to 60 days                  ☒ Felony
   V    ☐ 61 days and over
6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Bertha R. Mitrani
Assistant United States Attorney
FL Bar No.        88171

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ANCY MORANCY

**Case No**: _____

Count #: 1

Wire Fraud, Title 18, United States Code, Section 1343

* Max. Term of Imprisonment: **20 years**
* Mandatory Min. Term of Imprisonment (if applicable): **n/a**
* Max. Supervised Release: **3 years**
* Max. Fine: **$250,000**

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.